Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 7824 | **DATE** | 7/29/2002 |
| **CASE TITLE** | Central States et al vs. D Investments, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the reasons set forth above, DII motion to dismiss for failure to state a claim upon which relief may be granted [8-1] is denied. In connection with this ruling, Central States' motion to strike a portion of defendant's reply brief entered 5/30/2002, is hereby stricken as moot.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 3 0 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 15 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND;
HOWARD MCDOUGALL, Trustee;
RAY CASH, Trustee; JERRY YOUNGER,
Trustee; GEORGE WESTLEY, Trustee;
PHILLIP E. YOUNG, Trustee; CHARLES A.
WHOBREY, Trustee; ARTHUR H.
BUNTE, JR., Trustee; TOM J. VENTURA,
Trustee; DANIEL J. BRUTTO, Trustee and
GARY F. CALDWELL, Trustee,

   Plaintiff,

v.

D INVESTMENTS, INC.,
a Michigan corporation,

   Defendant,

Case No. 01 C 7824

Judge Ronald A. Guzman

## MEMORANDUM OPINION AND ORDER

  Pending is Defendant D Investments, Inc.'s ("DII") motion to dismiss the Amended Complaint of Plaintiff Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, trustee et al. ("Central States") pursuant to FED R. CIV. P. 12(b)(6). For the reasons set forth below, this motion is denied.

## BACKGROUND

  State Plumbing and Heating Supplies, Inc. ("State Plumbing") incorporated in June 1931, as a wholesale distributor and shop for plumbing, heating and industrial piping supplies with its principal place of business in Detroit, Michigan. On April 2, 1992, State Plumbing entered into a collective bargaining agreement with Teamsters Local 247. The terms of the agreement provided that State Plumbing would make timely contribution payments to both the Pension Fund and the Welfare Fund (hereinafter "Pension Fund" and "Welfare Fund"); though separate Trust Agreements formally established these obligations.

  In 1996, State Plumbing borrowed $750,000 from Bank One, formerly known as NBD



Bank. As part of the loan, Bank One took a security interest in all of State Plumbing's assets including its inventory, equipment and name. State Plumbing experienced financial difficulties and by December 1997 defaulted on its loan. Bank One then sought to foreclose on its security interest. In May 1998, State Plumbing stopped payments to both the Welfare and Pension funds.

In November 1998, Central States, a multi-employer pension fund providing retirement benefits, brought suit against State Plumbing in the Federal District Court for the Northern District of Illinois under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, seeking contributions owed the Pension Fund pursuant to the collective bargaining agreement for the period following April 1998. On January 19, 1999, after State Plumbing failed to appear, default judgment was entered in favor of Central States.

On June 11, 1999, Trustees for the Michigan Conference of Teamster Welfare Fund ("Michigan Fund"), an employee benefit plan, brought an ERISA action against State Plumbing in the United States District Court for the Eastern District of Michigan seeking payments owed to the Welfare Fund for the period from June 1998 to February 1999, pursuant to the collective bargaining agreement. On August 17, 1999, default judgment was again entered against State Plumbing after it failed to file an answer.

On August 23, 1999, Deena Canvasser incorporated DII for the purpose of employing her husband, Lenard Canvasser, who had served as State Plumbing's President. On October 4, 1999, Michigan Fund attempted to execute its judgment but was unsuccessful as all of State Plumbing's assets were encumbered by Bank One's security interest.

On November 17, 1999, State Plumbing and Bank One reached a settlement agreement whereby State Plumbing surrendered all of its assets to Bank One in full satisfaction of its debt. In a contemporaneous transaction, Bank One sold these assets to DII. DII, under Lenard's direction, hired State Plumbing's employees, assumed its customers and conducted business under its trade name.

Having received notice that DII had purchased all of State Plumbing's assets, Michigan Fund then sought to add DII as defendants, on grounds of successor liability, alter ego and

2

fraudulent conveyance, to satisfy its 1999 judgment. Following a two-day evidentiary hearing, Magistrate Judge Donald A. Scheer, treating the issue as a complicated collection action and therefore applying Michigan state law, found no express or implied assumption of State Plumbing's liability by DII and recommended denying Michigan Fund's FED. R. CIV. P. 25(C) motion. Judge Paul V. Gadola, accepted this recommendation, in effect ruling that DII could not be held liable for the judgment obtained against State Plumbing for monies due the Welfare Fund.

On October 10, 2001, seeking to satisfy its 1998 judgment against State Plumbing, Central States commenced this action alleging that DII is the federal common law successor to and alter ego of, State Plumbing. On March 28, 2002, in separate litigation in the United States District Court for the Northern District of Illinois, Judge Wayne A. Andersen entered Judgment for Central States and against State Plumbing for withdrawal liability. This Judgment was then made part of Central States' Amended Complaint, which also added Central States' additional trustees as parties. On May 1, 2002, DII initiated a motion to dismiss pursuant to FED R. CIV. P. 12(b)(6), contending that the principles of *res judicata* and collateral estoppel preclude judgment for Central States.

## DISCUSSION

"[A] Rule 12(b)(6) motion requires the court to accept as true all well-pleaded facts in the complaint, drawing all reasonable inferences in favor of the opposing party." *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). A complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46 (1957); *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989).

DII's argument that *res judicata* bars Central States complaint is ultimately insufficient as a matter of law. Under the doctrine of *res judicata* or claim preclusion a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Montana*

3

*v. U.S.*, 440 U.S. 147, 153 (1979); *See Blonder-Tongue Laboratories, Inc. v. Uni. Of Illinois Found.*, 402 U.S. 313, 328-29 (1971). Precluding parties and their privies from contesting matters they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. *Montana*, 440 U.S. at 153. There is, however, a presumption that nonparties are not bound by a judgment, which stems from due process concerns with the right to be heard and to have one's own day in court. *See Tice v. American Airlines, Inc.*, 162 F.3d 966, 972-73 (7th Cir. 1988); 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §4449, at 418-19 (1981).

Federal law controls the *res judicata* questions in this case because the prior judgment was rendered in a federal court on a federal law claim. *See Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir. 1994); *Connor v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988); *In the Matter of Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987). The requirements for *res judicata* under federal law are: (1) a final judgment on the merits; (2) an identity of the causes of actions; and (3) an identity of the parties or their privies. *See Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir. 1995); *Energy Coop., Inc.*, 814 F.2d at 1230. There is no dispute that element one- a final judgment on the merits has occurred; rather, the dispute centers around whether the remaining two elements have been satisfied.

Turning to the identity of the causes of action, we find that they are indeed identical. Building upon the notion of "same nucleus of operative facts," the standard that determines when two claims are so closely related that they constitute the same transaction for *res judicata* purposes is "if they are based on the same or nearly the same factual allegations." *Herrmann v. Cencom Cable Assoc. Inc.*, 999 F.2d 223, 226 (7th Cir. 1993). Here, the dispute surrounds whether DII is, in some form, liable for the judgments entered against State Plumbing. This is the same question that faced the United States District Court for the Eastern District of Michigan.

The factual allegations underlying Michigan Fund's claim that DII is liable for State Plumbing's debt are, likewise, identical to Central State's present claim. Both claims assert an

4

implied assumption of State Plumbing's debt by virtue of DII's use of State Plumbing's trade name, customers and employees. Central States alter ego claim indicates that one purpose for the formation of DII was to aid State Plumbing in avoiding its obligations under the collective bargaining agreement, a contention expressed by Michigan Fund and addressed in the Magistrate Judge's recommendation. Moreover, the "transaction" at issue is comprised of the same elements. Central States' claim, like Michigan Fund's, concerns State Plumbing's collective bargaining agreement, its settlement with Bank One, the details of DII's formation and composition, its purchase of State Plumbing's assets and its behavior thereafter. Additionally, the determination of DII's relationship to State Plumbing carries the same ramifications for both Michigan Fund and Central States, namely liability for delinquent contribution payments. Therefore, Central States' claim is based on the same or nearly the same operative facts as Michigan Fund's claim.

Further, Central States finds no relief in its contention that Michigan Fund mistakenly proceeded under a state law successor liability theory instead of asserting a federal common law theory pursuant to ERISA's preemption of state law. *See* 29 U.S.C. §1144 (1974); *Upholsters' Int'l Pension Fund v. Artistic Furniture of Pontiac, Inc.*, 920 F.2d 1323, 1327 (7th Cir. 1990). Indeed, *res judicata* operates not only as a bar to the further litigation of matters decided in a prior action, but also to any issues which could have been raised. *Golden*, 53 F.3d at 870. Michigan Fund, as an employee benefit plan deriving its authority from ERISA and as a party to multiple suits regarding contribution payments, should have been knowledgeable about the contours of federal law and asserted those theories in Michigan federal court.

Preclusion, then, hinges on whether Central States was in privity with Michigan Fund. We find that the parties were not in privity for purposes of *res judicata*. Privity is a descriptive term for designating those with a sufficiently close identity of interests. *In the Matter of L & S Industries, Inc.*, 989 F.2d 929, 932-33 (7th Cir. 1993); *See also* Wright *supra*, §4449 at 418-19 (noting the privity label simply expresses a conclusion that preclusion is proper). Privity requires a functional analysis concerned with assuring each litigant his or her own day in court. *Tice*, 162

5

F.3d at 971. The appropriateness of preclusion turns on how closely the two sets of interests coincide and the role the absentees played in the prior litigation. *Tice*, 162 F.3d at 973. At a minimum, the issues on which preclusion is sought must be common to both cases, and the claims or defenses of the two allegedly equivalent parties must be the same. *Id.* In addition, unless a formal kind of successor relationship is involved (e.g., subsequent landowner), there should be some indication not only that the second party was aware that the first litigation was going on and that the earlier litigation would resolve its claims, but also that the second party either had participated or had a legal duty to participate. *Id.* Finally, the due process rights of absentees must be respected. *Id.*

While, as discussed above, there is commonality between the issues and claims presented by Central States and Michigan Fund, they are not organized in a formal relationship (e.g. guardian and ward or successor corporations); instead, they operate as separate entities representing different interests. The Pension Fund, administered by Central States, pursuant to the requirements of § 402(a)(1) of ERISA, is maintained by its own Trust Agreement as is the Welfare Fund, controlled by Michigan Fund. 29 U.S.C. § 1102(a)(1) (1974). The Pension and Welfare Funds are managed by separate boards of trustees, distribute different benefits and are comprised of distinct memberships. The trustee's duties for the particular fund may result in a very different view of particular circumstances and require the pursuit of unique choices and interests. *Cf. Pipe Fitters Welfare Fund, Local Union 597 v. Mosbeck Indus. Equip.*, 856 F.2d 837, 842-43 (7th Cir. 1988) (recognizing the distinct interests of multiemployer funds and unions). DII's argument that the Funds are merely arms of the Teamsters Union, linked by the collective bargaining agreement, falls in the face of statutory authority vesting exclusive control over the assets of employee-benefit trust funds in the trustees alone, and not the employer or the union. 29 U.S.C. § 1103(a) (1974).

DII also suggests that the presence of Howard McDougall, trustee, as a named plaintiff in both the Michigan Fund and Central States' suits creates sufficient identity between the parties to establish privity. DII contends that Central States added additional plaintiffs in order to shield

6

the suit from same-party status. Normally, however, "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of *res judicata* in a subsequent action in which he appears in another capacity." *Federal Savings & Loan Ins. Corp. v. Dir. of Illinois Dept. of Revenue*, 650 F.Supp. 1217, 1225 (N.D. Ill. 1986) (quoting Restatement (Second) of Judgments § 26(2) (1982)). Mr. McDougall appears in distinct capacities; as a trustee for the Welfare Fund in the prior action and in the instant action as a trustee for the Pension Fund. The fiduciary provisions of ERISA were designed specifically to prevent dual loyalties or conflicts of interest on the part of trustees and to encourage behavior exclusively for the benefit of the individual plan's participants. *Pipe Fitters Welfare Fund*, 856 F.2d at 842. Further, there is no evidence suggesting, and some to the contrary, that Mr. McDougall participated in litigation decisions generally or with regard to State Plumbing or DII specifically, on behalf of either fund. Therefore, the appropriate conclusion for the court is that he appears in different capacities and is not bound by principles of *res judicata*.

Still, under the federal law of *res judicata*, a person, not a party, may be bound by a judgment if one of the parties to the suit is so closely aligned with his interests so as to be his virtual representative. *Tice*, 162 F.3d at 970. However, the 7th Circuit takes a dim view of virtual representation, in suits other than class actions, noting that it "has cast more shadows than light on the problem," and that no published opinion by the court has found privity on this basis. *DeBraska v. City of Milwaukee*, 189 F.3d 650, 653 (7th Cir. 1999); *Tice*, 162 F.3d at 970. *But see Pferdes v. International Sporthouse Registry, Inc.*, 1999 WL 1206640 1, 9-12 (N.D. Ill. 1999) (finding privity through virtual representation where party to the second suit had direct involvement with and control over party to the prior suit as well as sufficient opportunity to be heard and interest in the outcome). As one treatise observes, "[A]ll of the cases that in fact preclude relitigation by a nonparty have involved several factors in addition to apparently adequate litigation by a party holding parallel interests." Wright *supra* §4457 at 420 (1998 Supp.) (examples include control or participation in the earlier litigation, acquiescence, and deliberate maneuvering to avoid the effects of the first case).

7

None of these additional factors are present nor are the requirements outlined in *Tice,* relating to the second parties' awareness of and participation in the litigation commenced by the first party, satisfied. There is no evidence to suggest that Central States or McDougall were aware of Michigan Fund's efforts to join DII as a defendant. In fact, Central States claims, and consistent with the FED R. CIV. P. 12(b)(6) standard we construe in their favor, that they did not receive notice of Michigan Fund's suit until July 2, 2001, after Magistrate Judge Scheer had issued his recommendation. Additionally, there is no evidence that Central States in any way controls the litigation efforts of Michigan Fund or that they acquiesced to having Michigan Fund act as their agent in any matter regarding State Plumbing or DII. Further, whether Central States should have intervened or otherwise participated in the prior suit is rendered moot by their ignorance of the proceedings, and Michigan Fund's conscious decision or omission to join them pursuant to FED R. CIV. P. 19(a). Therefore, even though the parties' share the underlying interest in litigating DII's liability for judgments rendered against State Plumbing, we conclude that Michigan Fund does not stand as the virtual representative for Central States. Ultimately, concerns for Central States' due process rights to be heard and to have its day in court remain and overcome DII's arguments for privity.

DII contends that in the absence of *res judicata,* Central States is collaterally estopped from bringing the present action. Under collateral estoppel or issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in a subsequent suit based on a different cause of action involving a party (or their privy) to the prior litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979); *Montana* 440 U.S. at 153. The doctrine of collateral estoppel may be used to preclude relitigation of issues in a subsequent proceeding when: "(1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *Kraushaar v. Flanigan,* 45 F.3d 1040, 1050 (7th Cir. 1995) (quoting *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir. 1986)). "Whether the issues are

8

identical is a question of law." *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 922 (7th Cir. 1997).

Preclusion also fails for want of privity. Central States was not sufficiently involved in the conduct of the prior litigation to establish privity with Michigan Fund. *See Kraushaar*, 45 F.3d at 1050. Therefore, despite the fact that the underlying issue was fully and necessarily litigated on the merits in a prior action, in order to avoid the "great potential" for due process violations collateral estoppel does not apply. *Kunzelman*, 799 F.2d at 1178.

## CONCLUSION

For the reasons set forth above, DII motion to dismiss for failure to state a claim upon which relief may be granted is denied [Docket #8]. In connection with this ruling, Central States' Motion to Strike a Portion of Defendant's Reply Brief entered May 30, 2002, is hereby stricken as moot.

**SO ORDERED**                    **ENTERED:**

*[signature]*

**HON. RONALD A. GUZMAN**
**United States Judge** July 29, 2002

9